IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

ALMA M. BILLUPS, individually and on )
behalf of all other personal credit card )
holders of the defendant who are similarly )
situated, )
 )
Plaintiff, )
v. )          CASE NO. 2:03-cv-241-F
 )                    WO
MBNA AMERICA BANK, N.A., )
 )
Defendant. )

## MEMORANDUM OPINION AND ORDER

Plaintiff Alma Billups  (hereinafter ""Billups"), individually and on  behalf of a

putative class of other personal credit  cardholders of the defendant, brought this lawsuit

against defendant MBNA America Bank, N.A. (hereinafter "MBNA") in an Alabama state

court, alleging violations of the federal Fair Credit Billing Act (hereinafter "FCBA"), 15

U.S.C.A. §§ 1666-1666j, as enforced by the Truth in Lending Act (hereinafter "TILA"), 15

U.S.C.A. § 1640.  MBNA removed this action to this court pursuant to 28 U.S.C.A. §§ 1441

and 1446; invoking this court's jurisdiction under 28 U.S.C.A. § 1331 (federal question).

On May 1, 2003, MBNA filed a motion to stay the proceedings pending arbitration

under the Federal Arbitration Act (hereinafter "FAA"), 9 U.S.C.A. § 1-16.  (Doc. # 11).  In

turn, on June 2, 2003, Plaintiff Billups filed a motion seeking a jury trial on the question of

whether agreements to arbitrate exist in this case.  (Doc. # 18).  For the reasons to be

discussed below, the court finds that the motion to stay is due to be GRANTED, and the

motion for jury trial is due to be DENIED.

## I. FACTS AND PROCEDURAL HISTORY[1]

The disputes in this case arise from the following credit card account held by Plaintiff Billups and other personal credit card holders of the defendant who are similarly situated.

*Plaintiff Billups' Account.*

Billups opened a credit card account with MBNA in October 1996.   (Doc. # 11, Deborah L. Fisher Aff.). The account was governed by a cardholder agreement (hereinafter "Agreement") which contained a broad amendment provision allowing MBNA the right to "amend the Agreement by complying with the applicable notification requirements under federal law and those laws of the State of Delaware." (Doc. # 11, Ex. A, Agreement, p. 6).

On December 20, 1999, Billups was sent a notice indicating that MBNA intended to amend the Agreement to include, among other things, an arbitration provision.  (Doc. # 11, Ex. B, Important Amendments).  This arbitration provision states in relevant part:

> **Arbitration:**  Any claim or dispute ("Claim") by either you or us against the other, or against the employees, agents or assigns of the other, arising from or relating in any way to this Agreement or any prior Agreement or your account (whether under a statute, in contract, tort or otherwise and whether for money damages, penalties or declaratory or equitable relief), including Claims regarding the applicability of this Arbitration Section or the validity of the entire Agreement or any prior Agreement, shall be resolved by binding arbitration.
>
> The arbitration shall be conducted by the National Arbitration Forum ("NAF"), under the Code of Procedure in effect at the

---

[1]  The statement of facts is based upon the evidence submitted by both parties.

time the claim is filed. . . . At your written request, we will advance any arbitration filing fee, administrative and hearing fees which you are required to pay to pursue a Claim in arbitration.  The arbitrator will decide who will be ultimately responsible for paying those fees.  In no event will you be required to reimburse us for any arbitration filing, administrative or hearing fees in an amount greater than what your court costs would have been if the claim had been resolved in a state court with jurisdiction.  Any arbitration hearing at which you appear will take place within the federal judicial district that includes your billing address at the time the Claim is filed.  This arbitration agreement is made pursuant to a transaction involving interstate commerce, and shall be governed by the Federal Arbitration Act, 9 U.S.C. §§ 1-16 ("FAA").  Judgment upon any arbitration award may be entered in any court having jurisdiction.  The arbitration shall follow existing substantive law to the extent consistent with the FAA and applicable statutes of limitations and shall honor any claims or privilege recognized by law.  If any party requests, the arbitrator shall write an opinion containing the reasons for the award.

No Claim submitted to arbitration is heard by a jury and no Claim may be brought as a class action or as a private attorney general.  You will not have the right to act as a class representative or participate as a member of a class of claimants with respect to any Claim.  This Arbitration Section does not apply to Claims between you and us previously asserted in any lawsuits filed before the date this Arbitration Section becomes effective.  However, this Arbitration Section applies to all Claims now in existence or that may arise in the future.

*****

THE RESULT OF THIS ARBITRATION SECTION IS THAT, EXCEPT AS PROVIDED ABOVE, CLAIMS CANNOT BE LITIGATED IN COURT, INCLUDING SOME CLAIMS THAT COULD HAVE BEEN TRIED BEFORE A JURY, AS CLASS ACTIONS OR AS PRIVATE ATTORNEY GENERAL ACTIONS.

(*Id.*).  The notice also gave Billups the opportunity to reject the arbitration provision:

3

> You may choose not to be subject to this Arbitration Section by
> following the instructions at the end of this notice.   This
> Arbitration Section will become effective on February 1, 2000.
>
> *****
>
> *If you do not wish your account to be subject to this Arbitration
> Section, you must write to us at MBNA America . . .  Clearly
> print or type your name and credit card account number and
> state that you reject this Arbitration Section.  You must give
> notice in writing; it is not sufficient to telephone us.  Send this
> notice only to the address in this paragraph; do not send it with
> a payment.  **We must receive your letter at the above address by
> January 25, 2000 or your rejection of the Arbitration Section
> will not be effective**.*

(*Id*.) (emphasis in original).  Billups did not provide a written notice of rejection, and the

proposed amendments, including the arbitration provision, became effective February 1,

2000 as provided in the notice.

*This Litigation*

On January 30, 2003, Billups filed this lawsuit on behalf of herself and a putative

class of MBNA cardholders in the Circuit Court for Lowndes County, Alabama. (Doc. # 1,

Compl.).  Billups claims that MBNA is violating the FCBA, 15 U.S.C.A. § 1666c, and the

regulations promulgated to enforce the statute, 12 C.F.R. § 226.10, by not posting payments

received after 2:00 p.m. to a customer's account until the following day.  Billups requests

class treatment of this action and seeks the following forms of relief: injunctive relief,

declaratory relief, and monetary damages.  (*Id*.).

In March 2003, MBNA removed this lawsuit to federal court under 28 U.S.C.A. §§

1441 and 1446, and filed a motion pursuant to the FAA,  9 U.S.C.A. § 1-16, to stay these

4

proceedings in favor of arbitration.  Billups responded with a motion for a jury trial on the question of whether an arbitration agreement exists between her and MBNA.

## II.   JURISDICTION AND VENUE

The court exercises subject matter jurisdiction over this action pursuant to 28 U.S.C.A. § 1331 (federal question).  The parties do not contest personal jurisdiction or venue, and the court finds adequate allegations supporting both.

## III.   STANDARD OF REVIEW

Pursuant to the Federal Arbitration Act ("FAA"), a written arbitration "provision in any . . . contract evidencing a transaction involving commerce . . [is] valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C.A. § 2 (1991).  The effect of Section 2 is "to create a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act."  *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S.1 (1983).  Section 3 provides for the stay of proceedings in federal district courts when an issue in the proceedings is referable to arbitration.  *See* 9 U.S.C.A. § 3.  Section 4 provides for orders compelling arbitration when one party has failed, neglected, or refused to comply with an arbitration agreement.  *See* 9 U.S.C.A. § 4.

The FAA establishes "'a federal policy favoring arbitration.'"  *Shearson/American Exp., Inc. v. McMahon*, 482 U.S. 220, 226 (1987) (quoting *Moses H. Cone Mem. Hosp.*, 460 U.S. at 24).  Indeed, under the FAA, "any doubts concerning the scope of arbitrable issues

should be resolved in favor of arbitration." *Moses H. Cone Mem. Hosp.*, 460 U.S. at 24-25.

*See also Ruby-Collins, Inc. v. City of Huntsville, Alabama*, 748 F.2d 573, 576 (11ᵗʰ Cir. 1984)

("[F]ederal policy requires that we construe arbitration clauses generously, resolving all

doubts in favor of arbitration."). Therefore, courts must rigorously enforce agreements to

arbitrate. *See Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213 (1985).

Notwithstanding this presumption favoring arbitration, the FAA prohibits the

enforcement of an arbitration clause that is invalid "upon such grounds as exist at law or in

equity for the revocation for any contract." 9 U.S.C.A. § 2. Section 2 "gives states [ ]

method[s] for protecting consumers against unfair pressure to agree to a contract with an

unwarranted arbitration provision." *Allied-Bruce Terminix Cos., Inc. v. Dobson*, 513 U.S.

265, 281 (1995).

While federal policy favors arbitration, "arbitration is a matter of contract and a party

cannot be required to submit to arbitration any dispute which he has not agreed so to submit."

*United Steelworkers v. Warrior & Gulf Nav. Co.,* 363 U.S. 574, 582 (1960). Accordingly,

"[t]he question whether the parties have submitted a particular dispute to arbitration, *i.e.,* the

'question of arbitrability,' is 'an issue for judicial determination [u]nless the parties clearly

and unmistakably provide otherwise.'" *Howsam v. Dean Witter Reynolds, Inc.,* 537 U.S. 79,

83 (2002) (quoting *AT & T Techs., Inc. v. Communications Workers*, 475 U.S. 643, 649

(1986)). Issues to be decided by the court "include certain gateway matters, such as whether

the parties have a valid arbitration agreement at all or whether a concededly binding

6

arbitration clause applies to a certain type of controversy." *Green Tree Fin. Corp. v. Bazzle*, 539 U.S. 444, 451-53 (2003).

As a general rule, when considering these "gateway issues," the court "may consider only issues relating to the making and performance of the agreement to arbitrate," and not issues relating to the making of the contract generally. *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404 (1967); *John B. Goodman Ltd. P'ship v. THF Constr., Inc.*, 321 F.3d 1094, 1095-96 (11th Cir. 2003) (per curiam). "*Prima Paint's* mandate is that challenges to the validity of the contract as a whole must be presented to the arbitrator." *Rollins, Inc. v. Foster*, 991 F. Supp. 1426, 1431 (M.D. Ala. 1998).

There is an exception to the *Prima Paint* rule, however, for "cases where not merely the enforceability, but the initial formation or existence of a contract, including a disputed arbitration clause is legitimately called into question, and must be decided by the court." *Rainbow Investments, Inc. v. Super 8 Motels, Inc.*, 973 F. Supp. 1387, 1390 (M.D. Ala. 1997). Cases in which there is no signed contract and in which one party denies the existence of an agreement fall into this category. The Eleventh Circuit has explained:

> Under normal circumstances, an arbitration provision within a contract admittedly signed by the contractual parties is sufficient to require the district court to send any controversies to arbitration. Under such circumstances, the parties have at least presumptively agreed to arbitrate any disputes, including those disputes about the validity of the contract in general. Because the making of the arbitration agreement itself is rarely in issue when the parties have signed a contract containing an arbitration provision, the district court usually must compel arbitration immediately after one of the contractual parties so requests.

7

The calculus changes when it is undisputed that the party seeking to avoid arbitration has not signed any contract requiring arbitration. In such a case, that party is challenging the very existence of *any* agreement, *including the existence of an agreement to arbitrate*. Under these circumstances, there is no presumptively valid general contract which would trigger the district court's duty to compel arbitration pursuant to the Act. If a party has not signed an agreement containing arbitration language, such a party may not have agreed to submit grievances to arbitration at all. Therefore, before sending any such grievances to arbitration, *the district court itself* must first decide whether or not the non-signing party can nonetheless be bound by the contractual language.

*Chastain v. The Robinson-Humphrey Co.*, 957 F.2d 851, 854 (11th Cir. 1992) (citations and footnotes omitted). "In resolving these 'gateway issues,' the court applies ordinary state common law governing the formation of contract." *Taylor v. First North Am. Nat'l Bank*, 325 F. Supp. 2d 1304, 1309-1310 (M.D. Ala. 2004) (citations omitted).

## IV. DISCUSSION

In this case, the parties do not dispute whether Plaintiff's claims are covered by the purported arbitration agreement. Rather, the dispute is about the existence of an arbitration agreement in the first place and whether that agreement can be enforced.

Defendant's argument is plain. It argues that the cardmember agreement includes a valid, written agreement to arbitrate that clearly encompasses Plaintiff's claims. Therefore, Defendant argues, the court is required to stay this litigation and compel arbitration under the FAA. 9 U.S.C.A. §§ 3 & 4.

Broadly speaking, Plaintiff makes three classes of arguments in response. First, she argues that no arbitration agreement exists. Second, she argues that, even if the arbitration

8

agreement exists, federal law provides that it cannot be enforced because its provisions will prevent her from vindicating her statutory rights.  Third, she argues that the arbitration agreement cannot be enforced because its terms are unconscionable under Alabama law.

Interestingly, Plaintiff Billups and the plaintiffs in *Lawrence v. Household Bank*, 343 F. Supp. 2d 1101 (M.D. Ala. 2004) (Thompson, J.) are represented by the same attorneys, and Plaintiff's arguments in this matter– from her complaint to her opposition to Defendant's motion to stay– are close to identical to those raised in *Lawrence*.  This court agrees with the holding in *Lawrence* thus, in this opinion, the court will frequently rely on the analysis used by Judge Thompson in *Lawrence*.

The court now proceeds to address Plaintiff Billups' arguments in turn.

A.      *Existence of Arbitration Agreements*

Plaintiff tenders four arguments in support of her proposition that no agreement to arbitrate exists between her and Defendant.  She argues that (1) there is no evidence that the arbitration agreement was mailed or delivered to her; (2) she was not given meaningful notice of the arbitration agreement; (3) there is no evidence that she assented to the arbitration agreement; and (4) Defendant's right to change the cardmember agreement unilaterally makes it unenforceable.  Related to these issues is Plaintiff's motion for a jury trial on the issue of whether an agreement to arbitrate was made.

1.      *Delivery of the Arbitration Agreement*

Plaintiff argues that Defendant has not established that the arbitration agreement was

ever mailed or delivered to her, and that, therefore no arbitration agreement exists between her and Defendant.  This court has previously considered this very issue and held that "[b]ecause this issue goes to Plaintiffs' assent to the [arbitration] agreement, the court, and not the arbitrator, is the proper party to resolve this dispute." *Lawrence,* 343 F. Supp. 2d at 1110 (citing *Taylor*, 325 F. Supp. 2d at 1310).

As in *Lawrence*, 343 F. Supp. 2d at 1110, the court is persuaded that the totality of the evidence establishes that Defendant mailed the relevant cardmember agreement and amendments notice which contained the arbitration agreement, and that Plaintiff received these documents.  "The law recognizes a rebuttable presumption that an item properly mailed was received by the addressee." *Id*. (citing *Konst v. Florida East Coast Ry.*, 71 F.3d 850, 851 (11th Cir. 1996)).  In this case, the affidavit of Deborah L. Fisher, Senior Vice President of Defendant, indicates that the MBNA credit card, cardmember agreement and December 20, 1999 amendments notice were mailed to Plaintiff as part of a routine process.  (Doc. # 11, Fisher Aff. ¶s 3-5).  Furthermore, the affidavit states that the December 20, 1999 amendments notice was mailed to Plaintiff's address and was not returned to Defendant as undeliverable, thereby indicating that the mail reached the intended recipient.  (*Id*. at ¶ 5). Accordingly, the court can thus presume that Plaintiff received the amendments notice which contained the arbitration agreement.

Moreover, despite Plaintiffs' general denial in her affidavit that she received the

amendments notice,[2] she alternatively speculates– in the same paragraph of her affidavit–
that "either [she] did not receive [the amendments notice] at all, or else it was not marked or
identified as being an important change in or waiver of [her] legal rights about [her] credit
card and [she] did not notice it in the mail. (Pl. Aff. ¶ 4). Accordingly, these bare assertions
are insufficient to create a question of material fact on the issue of whether Plaintiff assented
to the arbitration provision as set forth in the amendments notice, and this court– as in
*Lawrence*– finds no ground to deny Defendant's motion on this basis.

### 2.    *Meaningful Notice*

Plaintiff argues that no arbitration agreement exists because she was not given
meaningful notice that her cardmember agreement, as amended by the amendments notice,
contained an arbitration provision. The core of Plaintiff's argument is that the arbitration
provision was in fine print and inconspicuous. This argument is unpersuasive because the
inconspicuousness of an arbitration clause does not provide a basis to invalidate an
agreement to arbitrate. "Arbitration clauses need not be specially marked or singled out in
some way from other provisions." *See Rollins, Inc. v. Foster*, 991 F. Supp. 1426, 1434 (M.D.
Ala. 1998); *see also Nobles v. Rural Cmty Ins. Servs.*, 122 F. Supp. 2d 1290, 1300 (M.D. Ala.
2000) (stating that "courts cannot single out arbitration clauses for discriminatory
treatment"). Indeed, to hold otherwise would violate the Supreme Court's conclusion that
the FAA precludes "States from singling out arbitration provisions for suspect status,

---

[2]  (Doc. # 16, Ex. A, Pl. Aff. ¶ 4) ("I never received anything in the mail from MBNA about
arbitration, or about any amendment or change in my agreement with MBNA.").

requiring instead that such provisions be placed upon the same footing as other contracts." *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996) (internal quotations omitted) (holding that the FAA preempts a Montana statute that declared an arbitration clause unenforceable unless the contract contains underlined capital letters on the first page of the contract stating that it contains an arbitration provision).

This court has rejected nearly identical arguments on the ground that the arguments were foreclosed by the Supreme Court's decision in *Doctor's Associates*. *Taylor*, 325 F. Supp. 2d at 1312 (Thompson, J.) (identical argument); *Lawrence*, 343 F. Supp. 2d at 1110 (Thompson, J.) (same). *See also Taylor v. Citibank USA, N.A.*, 292 F. Supp. 2d 1333, 1337 (M.D. Ala. 2003) (Albritton, J.) (plaintiff argued that arbitration agreement was on the fourth page of a notice of change of terms); *Billups v. Bankfirst*, 294 F. Supp. 2d 1265, 1269 (M.D. Ala. 2003) (Albritton, J.) (plaintiff argued that no one from the defendant bank called her attention to arbitration provision in credit card agreement); *Gipson v. Cross Country Bank*, 294 F. Supp.2d 1251, 1255 (M.D. Ala. 2003) (Albritton, J.) (same). Accordingly, the court agrees with the analysis of Judges Thompson and Albritton, and concludes that this argument affords Plaintiff no relief from the arbitration agreement.

>    3.    Assent to Cardmember Agreement

Plaintiff next argues that she did not assent to the arbitration provision in her cardmember agreement, as amended by the amendments notice, and asserts that this is an issue for a jury to decide. This argument is not persuasive. This court has previously

considered the question of whether the use of a credit card can be understood as indicating assent to be bound by the terms of a cardmember agreement, and held that credit card usage is sufficient to signal assent. *See e.g., Lawrence*, 343 F. Supp. 2d at 1111;[3] *Taylor*, 325 F. Supp. 2d at 1313. Accordingly, as it is undisputed that Plaintiff used her credit card after she received the cardmember agreement which included a provision affording Defendant the opportunity to subsequently amend the agreement, she has assented to be bound by that cardmember agreement. Further, because Defendant amended the cardmember agreement to include the arbitration provision and Plaintiff did not opt out of the arbitration provision, this court finds that as a general matter of law, and as a matter of Alabama law, Plaintiff's credit card use signaled her assent to the terms of the cardmember agreement as amended. Furthermore, to the extent that the cardmember agreement at issue in this case is governed by Delaware law, other courts have held that Defendant's method of amending cardmembers agreements to include an arbitration provision does not violate Delaware law. *See, e.g., Lloyd v. MBNA America Bank, N.A.,* 2001 WL 194300 (D. Del. 2001), *aff'd,* 27 Fed. Appx. 82 (3rd Cir. 2002); *Edelist v. MBNA America Bank*, 790 A.2d 1249 (Del. Super. Ct. 2001) (applying Delaware substantive law and enforcing arbitration amendment).

---

[3] In *Lawrence*, the court relied on its analysis in *Taylor*, 325 F. Supp. 2d at 1312-1314, in resolving this issue. In *Taylor*, the court first noted that the issue was one to be resolved by the court, not the arbitrator. 325 F. Supp. 2d at 1313. Thereafter, the court found that it was not unreasonable that the cardmember agreement between Taylor and the bank would provide that her use of the card amounted to her assent to the terms of the agreement because, under Alabama law, "a credit card holder's use of her card signals her assent to the terms of the credit card agreement." *Id.* (citing *SouthTrust Bank v. Williams*, 775 So.2d 184, 189 (Ala. 2000)).

### 4. Illusory Agreement

Plaintiff next argues that the cardmember agreement between her and Defendant is illusory because it includes a provision that allows Defendant to amend the agreement unilaterally. This court has rejected the same argument that Plaintiff raises here on numerous occasions because it contravenes the *Prima Paint* rule that arguments that go to the existence of a contract as a whole are to be resolved by the arbitrator and not the court.[4] *Taylor*, 325 F. Supp. 2d at 1314-1316; *Lawrence*, 343 F. Supp. 2d at 1111; *Taylor*, 292 F. Supp. 2d at 1338-40; *Billups*, 294 F. Supp. 2d at 1270-71; *Gipson*, 294 F. Supp. 2d at 1256-57. This court finds no reason to stray from these holdings and concludes that it is foreclosed by *Prima Paint* from considering whether unilateral amendment provisions in credit cardmember agreements rendered those agreements illusory. Consequently, that issue is one to be resolved by the arbitrator, not the court.

### 5. Motion for Jury Trial

Plaintiff separately filed a motion for a jury trial on the question of whether an agreement to arbitrate existed between her and Defendant. The FAA provides that "[i]f the making of the arbitration agreement . . . be in issue, the party alleged to be in default may . . . demand a jury trial on such issue." 9 U.S.C.A. § 4. To warrant a jury trial, the Eleventh

---

[4] This argument is also unavailing because Alabama law explicitly allows credit card companies to amend cardmember agreements in exactly the manner provided for in Plaintiffs' cardmember agreements. 1975 Ala. Code § 5-20-5; *SouthTrust Bank v. Williams*, 775 So.2d 184, 190 (Ala. 2000). The same is true in Delaware. *See Edelist*, *supra*. Thus, Defendant properly added the arbitration provision to Plaintiff's cardmember agreements.

Circuit has explained that the party seeking to avoid arbitration must "unequivocally deny that an agreement to arbitrate was reached and must offer 'some evidence' to substantiate the denial." *Wheat, First Secs., Inc. v. Green*, 993 F.2d 814, 818 (11th Cir. 1993) (quoting *Chastain,* 957 F.2d at 854). The party challenging the arbitration provision must create a genuine issue of fact presenting "enough evidence to make the denial colorable." *Chastain*, 957 F.2d at 855.

Plaintiff's motion for a jury trial is due to be denied because she has not created a genuine issue of fact as to whether an arbitration agreement was reached between her and Defendant. As discussed above, the court finds that Plaintiff received her cardmember agreement and assented to its terms. Furthermore, the court is precluded by *Doctor's Associates* from holding that the cardmember agreement, as amended by the amendments notice, did not sufficiently disclose the presence of the arbitration provision. Correspondingly, the court is precluded by *Prima Paint* from taking up the question of the alleged illusory nature of Defendant's promises in the cardmember agreement. Because nothing is left to present to a jury, Plaintiff's motion for a jury trial is denied.

B.    *Vindication of Statutory Rights*

Plaintiff argues that, if she is required to go to arbitration, the provision in her arbitration agreement barring class arbitration will prevent her from vindicating her rights under the TILA and FCBA. This court addressed these precise arguments in *Billups*, 294 F. Supp. 2d at 1272-1273, and found that, based upon the Eleventh Circuit's holding in

15

*Randolph v. Green Tree Fin. Corp.-Alabama*, 244 F.3d 814, 819 (11th Cir. 2001), a ban on class actions is enforceable even if it precludes a plaintiff from utilizing class action procedures in vindicating statutory rights under TILA and FCBA.[5]  *See also Lawrence*, 343 F. Supp. 2d at 1112 (rejecting same argument based on *Randolph*).  There is no reason to reach a different conclusion here.

Plaintiff next argues that the costs associated with arbitrating her claims in accordance with the arbitration provision in her amended cardmember agreement will effectively prevent her from vindicating her rights under the TILA and the FCBA.[6]  Thus, Plaintiff argues, the arbitration provision is unenforceable.[7]

As explained in *Taylor*, 325 F. Supp. 2d at 1316-19, this court has considered and rejected the very argument Plaintiff is making.  The question before Judge Thompson in *Taylor* was whether the filing and hearing fees required by the National Arbitration Forum,

---

[5]  In *Randolph*, the Eleventh Circuit held that "a contractual provision to arbitrate TILA claims is enforceable even if it precludes a plaintiff from utilizing class action procedures in vindicating statutory rights under [the] TILA." 244 F.3d at 819.  In *Billups*, Judge Albritton relied on the Eleventh Circuit's reasoning in *Randolph* and similarly concluded that an arbitration clause is enforceable even though it prohibits the plaintiff from seeking classwide relief for her FCBA claim. 294 F. Supp. at 1272-74.  Thus, *Billups* extended the holding of the Eleventh Circuit in *Randolph* to apply with equal force to FCBA claims.

[6]  It is important to note that Plaintiff's first argument regarding the vindication of her statutory rights differs slightly from her second.  As stated above, in Plaintiff's first argument she asserts that the arbitration agreement at issue here actually bars class arbitration.  In her second argument, Plaintiff contends that the costs of class arbitration are prohibitively high so as to effectively prevent her from bringing a class action.

[7]  The court may properly resolve this argument under *Prima Paint* because it is directed at the arbitration provision itself and not at the cardmember agreement generally.  *See Taylor*, 325 F. Supp. 2d at 1316 n. 20.

the forum specified in the parties' arbitration clause, effectively prevented the plaintiff from bringing a class action, and thus, prevented her from vindicating her rights under TILA and the FCBA. Judge Thompson, relying on the Eleventh Circuit's decision in *Randolph,* found that "even if Taylor is correct that the filing and hearing fees required by the NAF would prevent her from bringing a class-action claim in arbitration, and even if the NAF rules explicitly proscribe class-action arbitration, the court must still compel arbitration pursuant to the agreement . . ." 325 F. Supp. 2d at 1318. Judge Thompson observed that "[i]f an arbitration agreement that flatly prohibits classwide arbitration of claims arising under the TILA is enforceable [under *Randolph*], surely an arbitration provision that may have the effect of preventing classwide arbitration is enforceable." *Id.* Thus, Judge Thompson concluded that the fact that the arbitration provision in the cardmember agreement will prevent Taylor from bringing a class-action lawsuit was not a reason to find the arbitration provision unenforceable. *Id.* at 1319. There is no reason for this court to reach a different conclusion in this case. As such, the court concludes that Defendant's arbitration provision does not prohibit Plaintiff from vindicating her statutory rights under either the TILA or FCBA.

C.    *Unconscionability*

Plaintiff's final argument is that the arbitration provision in her cardmember agreement, as amended, is unconscionable under generally applicable Alabama contract law

because it effectively precludes her from bringing an action to enforce her rights.[8]  Citing *Leonard v. Terminix Int'l Co.*, 854 So. 2d 529 (Ala. 2002), Plaintiff argues that the arbitration agreement bars her from bringing class arbitrations and the costs of bringing her individual claims in arbitration will be greater than the amount she is likely to recover.  This argument is identical to the one made in *Taylor*.  *See* 325 F. Supp. 2d at 1319.

As discussed in *Taylor*, this court finds that the case *sub judice* is distinguishable from *Leonard*.[9]  Unlike in *Leonard*, there is no claim here that Plaintiff's arbitration agreement limits the damages she can recover and no argument that her arbitration agreement limits her ability to recover costs and fees.  Accordingly, this argument does not provide Plaintiff with relief.  *See Taylor*, 325 F. Supp. 2d at 1321; *Billups*, 294 F. Supp. 2d at 1277 (finding that arbitration clause was not unconscionable under Alabama law because it did not limit any of the plaintiff's substantive remedies available under the TILA).

In conclusion, the court has considered all of Plaintiff's arguments in opposition to arbitration and finds them to be without merit.  Because the arbitration agreement meets the requirements of 9 U.S.C. § 2, the court finds that it is enforceable.  As such, Plaintiff's claims in her Complaint must be resolved by arbitration.  *See* 9 U.S.C. § 4.  Thus, as provided in 9

---

[8]  As noted previously, the cardmember agreement between Plaintiff and Defendant has a clause providing that Delaware law governs its interpretation.  However, this choice of law distinction is not detrimental as other courts have found that, under Delaware law, such agreements are not unconscionable.  *See Edelist, supra.*

[9]  In *Leonard*, the Alabama Supreme Court held that an arbitration provision was unconscionable because it restricted the plaintiffs to a forum where the expense of pursuing their claims exceeded the amount in controversy.

U.S.C. § 3, the court will stay these proceedings pending the outcome of arbitration.

## V.  CONCLUSION

Accordingly, for the reasons stated above, it is hereby ORDERED that:

1.    The motion to stay the proceedings pending arbitration filed by Defendant MBNA on May 1, 2003 (Doc. # 11) is GRANTED.

2.    Plaintiff Billups is ENJOINED and RESTRAINED from failing to arbitrate her claims against Defendant MBNA.

3.    The motion for jury trial filed by Plaintiff Billups on June 2, 2003 (Doc. # 18) is DENIED.

4.    Pursuant to 9 U.S.C. § 4, all parties to this litigation shall proceed with arbitration on Plaintiff Billups' claims in the manner provided for in the Arbitration Provision;

5.    Pursuant to 9 U.S.C. § 3, this action be and the same is hereby STAYED pending arbitration; and

6.    The parties shall file a jointly-prepared status report detailing the status of arbitration every first Tuesday of each month, beginning June 7, 2005.

DONE this 20th day of April, 2005.


                                        /s/ Mark E. Fuller
                              CHIEF UNITED STATES DISTRICT JUDGE